AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>A black Samsung smartphone with black case; IMEI: 357532325750975, belonging to Hugo Armondo Higuera-Acosta | Case No.   24-3329 MB |

### SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before *September 30, 2024* *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *Sept. 16, 2024 @ 1122 Am*          *M Morrissey*
                                                                                 *Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable Michael T. Morrissey, U.S. Magistrate Judge</u>
                                                                         *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung cell phone with black case with unknown assigned telephone number; IMEI: 357532325750975, belonging to defendant Hugo Armando Higuera-Acosta, (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the United States Drug Enforcement Administration (DEA) Phoenix Field Division in Phoenix, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), occurring during the period beginning January 30, 2024, through and including February 13, 2024, including:

      a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

      b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

      e.  any information recording schedule or travel;

      f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

      g.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>A black Samsung smartphone with black case; IMEI:<br>357532325750975, belonging to Hugo Armondo<br>Higuera-Acosta | Case No. 24-3329MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

### See attached Affidavit of Special Agent Johanna Childress

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Travis L. Wheeler

JOHANNA CHILDRESS Digitally signed by JOHANNA CHILDRESS
Date: 2024.09.16 08:45:15 -07'00'
*Applicant's Signature*

Johanna Childress, Special Agent, DEA
*Printed name and title*

Sworn telephonically and signed electronically.

Date: September 16, 2024

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung cell phone with black case with unknown assigned telephone number; IMEI: 357532325750975, belonging to defendant Hugo Armando Higuera-Acosta, (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the United States Drug Enforcement Administration (DEA) Phoenix Field Division in Phoenix, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the
SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846
(Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. §
841 (Possession with Intent to Distribute a Controlled Substance), occurring during the
period beginning January 30, 2024, through and including February 13, 2024, including:

> a.  all information related to the sale, purchase, receipt, shipping, importation,
> transportation, transfer, possession, or use of drugs;
>
> b.  all information related to buyers or sources of drugs (including names,
> addresses, telephone numbers, contact information, photographs, locations,
> or any other identifying information);
>
> c.  all bank records, checks, credit card bills, account information, or other
> financial records reflecting the disposition of drug proceeds;
>
> d.  all information regarding the receipt, transfer, possession, transportation, or
> use of drug proceeds;
>
> e.  any information recording schedule or travel;
>
> f.  evidence indicating the cellular telephone user's state of mind as it relates to
> the crime under investigation; and
>
> g.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the
SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time
the things described in this warrant were created, edited, or deleted, such as logs,
phonebooks, saved usernames and passwords, documents, correspondence, photographs,
and browsing history.

As used above, the terms "records" and "information" includes records of telephone
calls; names, telephone numbers, usernames, or other identifiers saved in address books,
contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Johanna Childress, being first duly sworn, hereby deposes and states as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a black Samsung cellular telephone, IMEI 357532325750975, found in the possession of Hugo Armando Higuera-Acosta incident to his arrest, hereafter referred to as "SUBJECT CELLULAR TELEPHONE," described more particularly in Attachment A; and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.      I am a Special Agent with United States Drug Enforcement Administration (DEA), and have been since December 2022. I am currently assigned to the Phoenix Field Division, Group 16 ("DEALERS"). DEALERS is an enforcement group comprised of agents and officers from federal and local agencies, assigned to investigate large-scale drug trafficking. Your Affiant has successfully completed the DEA Basic Agent Training in Quantico, Virginia, where he received several hundred hours of comprehensive, formalized instruction in such matters as drugs identification, detection, trafficking and interdiction, money laundering techniques, and asset identification, seizure and forfeiture.

3.      Throughout my time in law enforcement, I have conducted and participated in multiple investigations involving the unlawful importation, transportation, and distribution of drugs including clandestine fentanyl, methamphetamine, cocaine, and marijuana. I have debriefed defendants and witnesses who had personal knowledge of major drug trafficking organizations. I have also executed search warrants and conducted physical and electronic surveillance using confidential sources and sources of information. I am familiar with methods employed by large drug trafficking organizations and the tactics

1

they employ to evade law enforcement, such as the following: frequent changing of cell phones, the use of pre-paid phones (a.k.a. "burner phones"), counter surveillance techniques, the use of false or fictitious identities, and coded communications and conversations.

4.     In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

5.     By virtue of your Affiant's employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

    b. Interviewing witnesses, confidential sources ("CS") and sources of information ("SOI") relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); and

    c. Functioning as a special agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments.

6.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either

directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

7.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.   **BASIS FOR PROBABLE CAUSE**

8.      February 13, 2024, a DEA confidential source (the "CS") was communicating with a Mexico-based source of supply (the "SOS") regarding the purchase and delivery of approximately 35 pounds of methamphetamine in the greater Phoenix area at a price of $800 United States Dollars (USD) per pound. The CS is believed to be credible and reliable. The CS is working for financial benefits.  To date, the CS has been involved in numerous law enforcement operations, which have led to the seizure of distribution quantities of methamphetamine, cocaine, heroin, fentanyl powder, M30 fentanyl pills, and proceeds believed to be generated through the sale of controlled substances. The CS has numerous contacts throughout Arizona and Mexico who provide the CS with drug-related information. The CS shares this information with law enforcement.

9.      To facilitate the methamphetamine transaction the Source of Supply (hereafter, "SOS") provided the CS with the telephone number of a local Phoenix-based drug trafficker. Shortly thereafter, the local Phoenix-based drug trafficker, later identified as Hugo Armando Higuera-Acosta ("HIGUERA") contacted the CS to consummate the methamphetamine transaction. The CS recorded the communications between the CS and HIGUERA.

10.      The CS communicated with HIGUERA to discuss the pending methamphetamine transaction. HIGUERA then provided the CS an address along South

19th Avenue and West Buckeye Road in Phoenix, Arizona to conduct the methamphetamine transaction.

11.     On that same date (February 13, 2024) based upon communications between the CS and HIGUERA, Special Agents with DEA established surveillance along South 19th Avenue and West Buckeye Road in Phoenix, Arizona.

12.     At approximately 6:20PM, the CS informed HIGUERA that the CS had arrived at the proposed meeting location. Soon thereafter, Higuera told the CS to follow him (HIGUERA) to a nearby street to complete the transaction.

13.     At approximately 6:30PM, investigators observed a red Kia Spectra enter the proposed meeting location and exit onto West Buckeye Road traveling eastbound. The CS followed the red Kia Spectra in the CS' vehicle. Surveillance officers observed two (2) males, later identified as HIGUERA and Alex Javier Medina-Penuelas ("Medina"), in the red Kia Spectra.

14.     Shortly thereafter, law enforcement officers observed the red Kia Spectra stop in the vicinity of South 13th Avenue and West Cocopah Street. The red Kia Spectra then parked on the south side of West Cocopah Street. The CS parked the CS' vehicle on the north side of Cocopah Street. The passenger of the red Kia Spectra, HIGUERA, exited the red Kia Spectra with a bag and placed the bag on the passenger's side rear seat of the CS' vehicle.

15.     Shortly thereafter, law enforcement officers wearing clearly marked police attire activated their emergency lights and sirens and approached the red Kia Spectra. Investigators thereafter detained HIGUERA and Medina without incident.

16.     During a search of the CS' vehicle, law enforcement discovered a gray bag containing clear plastic bags of suspected methamphetamine on the rear area of the passenger compartment. The total gross weight (including packaging) of the suspected methamphetamine was 7.6132 kilograms. Law enforcement officers thereafter conducted

a field-test of a sample of the suspected methamphetamine, which sample indicated presumptive positive for methamphetamine.

17.     Pursuant to a search of the red Kia Spectra incident to the arrest of HIGUERA and Medina, law enforcement officers discovered a bag under the front passenger's seat containing clear plastic bags of suspected methamphetamine. The total gross weight (including packaging) of the suspected methamphetamine was 880.1 grams. Investigators also discovered a cellphone located on the driver's seat of the red Kia Spectra. Law enforcement officers thereafter conducted a field-test of a sample of the suspected methamphetamine, which sample indicted presumptive positive for methamphetamine.

18.     Pursuant to a search of Medina's person incident to arrest, law enforcement officers discovered a clear plastic bag containing suspected methamphetamine as well as clear plastic bags containing suspected fentanyl pills. The total gross weight (including packaging) of the suspected methamphetamine was 57.3 grams. The total gross weight (including packaging) of the suspected fentanyl pills was 177.2 grams. Investigators also discovered a cellphone located on Medina's person. Law enforcement offices thereafter conducted a field-test of a sample of the suspected methamphetamine and the suspected fentanyl pills, respectively. The sample of the suspected methamphetamine indicated presumptive positive for the presence of methamphetamine, and the sample of the suspected fentanyl pills indicated presumptive positive for the presence of fentanyl.

19.     During a search of HIGUERA's person incident to arrest, law enforcement officers discovered two cellphones on HIGUERA's person.

20.     Law enforcement officers thereafter administered HIGUERA and Medina their *Miranda* rights and both agreed to speak to law enforcement officers without the presence of an attorney.

  a.   HIGUERA, in his interview, admitted to working for a Mexico based Drug Trafficking Organization (DTO) distributing narcotics and claimed that he

had been directed to deliver approximately 15 pounds of suspected methamphetamine to the meeting location. HIGUERA further asserted that he had been given the drugs by someone else that day. He claimed he did not have full knowledge of the organization and served only as a middleman and courier. He was only going to be paid $300 for his part in the drug deal.

b. Medina, in his interview, claimed that he had entered the United States earlier that day. He was picked up by an unknown individual and brought to Phoenix, Arizona. Medina further claimed that during his first hours in Phoenix, HIGUERA bought him new clothes, a haircut, and gave him two phones. Medina also claimed that HIGUERA gave him the 177g of fentanyl pills, 57g of methamphetamine, and approximately $900 that was found on his person at the time of arrest, and that HIGUERA had instructed Medina to drive the Kia to the drug sale meeting location where they were ultimately contacted by law enforcement.

21.     Following a search of HIGUERA's person, law enforcement recovered a two cell phones, one black Samsung cell phone with black case with unknown assigned telephone number; IMEI: 357532325750975 (SUBJECT CELLULAR TELEPHONE), and one black Samsung cell phone with assigned telephone number 623-698-1217. Law enforcement officers seized both phones from HIGUERA's person and transported them to the DEA Phoenix Field Division for further processing. HIGUERA gave consent to investigators for the black Samsung cell phone with assigned telephone number 623-698-1217, but not for the SUBJECT CELLULAR TELEPHONE (black Samsung cell phone with unknown assigned telephone number; IMEI: 357532325750975).

22.     On February 14, 2024, law enforcement officers filed a federal criminal complaint against HIGUERA and Medina in Case No. 24-6084MJ. The criminal complaint alleged that Higuera and Medina violated Title 21, United States Code, Sections 841(a)(1)

and 841(b)(1)(C), possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

23.    On March 12, 2024, a federal grand jury convened in the District of Arizona, Phoenix Division, returned an indictment against Higuera and Medina in Case No. CR-24-00428-PHX-DWL, alleging that HIGUERA and Medina conspired to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846, and possession with Intent to distribute methamphetamine 841(a)(1) and 841(b)(1)(C), and that Medina possessed with the intent to distribute fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). HIGUERA and Medina are currently pending trial.

24.    In my training and experience, I know that the SUBJECT CELLULAR TELEHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the DEA.

## III.    ITEMS TO BE SEIZED

25.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

26.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.    Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other

capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

   b.   Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONE.

   c.   Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONE.

   27.   In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

   **IV.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

   28.   As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

   29.   *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

8

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a cellular

telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

30.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

10

executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet.  Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation.  Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone.  Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

11

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

31.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans, with respect to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), occurring during the period beginning January 30, 2024, through and including February 13, 2024.

32.      *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

## V.   **CONCLUSION**

33.   Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE, further described in Attachment A.

JOHANNA CHILDRESS   Digitally signed by JOHANNA CHILDRESS
Date: 2024.09.16 08:46:17 -07'00'

Special Agent Johanna Childress
U.S. Drug Enforcement Administration

Subscribed and sworn to before me this _16_ day of September 2024.

M Morrissey

HONORABLE MICHAEL T. MORRISSEY
UNITED STATES MAGISTRATE JUDGE

13